IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GULTELA QASEM, <br><br> Plaintiff, <br><br> v. <br><br> LUIS A. TORO; SUPERINTENDENT OF TACONIC CORRECTIONAL FACILITY DELORES THORNTON; DEPUTY SUPERINTENDENT FOR SECURITY WILLIAM ROGERS; JOHN DOES 1-10. <br><br> Defendants. | No.: 09-CV-8361 (SHS) <br> (Jury Trial Demanded) <br><br> ECF Case <br><br> **COMPLAINT** |

Plaintiff Gultela Qasem ("Plaintiff"), by and through her attorneys, alleges as follows:

### NATURE OF THE ACTION

1.  Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), is under the care, control and supervision of DOCS personnel, including the defendants herein. While in defendants' custody, care, control and supervision, plaintiff was repeatedly sexually assaulted and raped, over a period of nine months, by a DOCS corrections officer, defendant Luis A. Toro. Toro's misconduct came to the attention of the DOCS Office of Inspector General ("IG"), and an investigation was started. Notwithstanding the knowledge that improper sexual contact by prison guards with female inmates is persistent and recurring, of the allegations of sexual misconduct by Toro against plaintiff, and that an investigation thereof had been commenced, Toro's supervisors, the Superintendent and the Deputy Superintendent for Security of the facility, failed to take adequate steps to protect plaintiff from Toro's sexual misconduct and, indeed, permitted Toro to have continued access to plaintiff even while the investigation was underway. During this time, Toro continued his sexual

misconduct against plaintiff, and multiple further assaults and rapes occurred. Plaintiff brings this action against the corrections officer who assaulted and raped her, and against the corrections supervisors who culpably permitted the assaults on and rapes of Plaintiff to occur through the maintenance of or failure to remedy policies and practices that enabled the assaults and rapes to occur, the failure to adequately supervise Toro, and their deliberate indifference to Plaintiff's safety and dignity.

2. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 to redress defendants' violations of her rights under the Eighth and Fourteenth Amendment rights of the United States Constitution.

## JURISDICTION AND VENUE

3. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a). Plaintiff's claims are authorized by 42 U.S.C. § 1997e(a) – (e), and 42 U.S.C. § 1983.

4. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the district.

## PARTIES

5. Plaintiff Qasem is a female inmate currently under the custody of DOCS in Bedford Hills Correctional Facility ("Bedford"). During the time relevant herein, Plaintiff was an inmate under DOCS custody at Taconic Correctional Facility ("Taconic").

6. Plaintiff suffers from Post-Traumatic Stress Disorder as a result of her childhood in war-torn Afghanistan. She was also raped at the age of 16 in the United States.

7. Toro is sued in his individual capacity. At all relevant times, Toro was a corrections officer at Taconic. At all relevant times, his duties included ensuring the safety of inmates at Taconic.

8. Defendant Delores Thornton is sued in her individual capacity. At all relevant times, Thornton was the Superintendent of Taconic. Upon information and belief, Thornton was responsible for the assignment and removal of staff; the training of staff; the supervision of staff and inmates to ensure a safe environment, including the enforcement of DOCS rules and regulations; the housing assignment of inmates within the facility; the review of decisions to place prisoners in punitive or administrative segregation; the investigation of and response to complaints of misconduct against staff, in conjunction with the Inspector General's Office; and establishing and/or enforcing the customs and practices with regard to sexual contact and conduct between employees and inmates at Taconic. Thornton was also the immediate supervisor of defendant Rogers at all relevant times.

9. Defendant William Rogers is sued in his individual capacity. At all relevant times, Rogers was the Deputy Superintendent for Security at Taconic. Upon information and belief, he was responsible for the training and supervision of staff and inmates to ensure a safe environment, including the enforcement of DOCS rules and regulations; the investigation of and response to complaints of misconduct against staff, in conjunction with the Inspector General's Office; for decisions concerning the assignment of staff, including whether to remove staff from contact with prisoners; for decisions concerning the assignment of inmates, including whether to remove inmates from contact with certain staff; and for establishing and/or enforcing the customs and practices with regard to sexual contact and conduct between employees and inmates at Taconic.

10. The true names of Defendants named herein as DOES 1-10 are unknown to Plaintiff, who therefore sues said defendants by said fictitious names. Plaintiff will amend this complaint to show said defendants' true names and capacities when the same have been

ascertained. Plaintiff is informed and believes, and based thereon alleges, that defendants sued herein as DOES 1-10 are in some manner responsible for the acts and injuries alleged herein.

11. At all relevant times, defendants were acting under color of New York state law. Each defendant is responsible in some manner for the occurrences hereinafter alleged, which proximately caused Plaintiff's injuries.

## STATEMENT OF FACTS

### Background

12. Due to the coercive nature and the inherent power imbalance of a prison setting, sexual contact by DOCS personnel with inmate is a criminal act under all circumstances. Indeed, New York State law provides that inmates can not consent to sexual activity with corrections staff. *See* N.Y. Penal Law § 130.05(e).

13. Taconic is a DOCS facility which houses female inmates.

14. Upon information and belief, before and during the relevant time period, corrections staff at Taconic engaged in sexual abuse of inmates.

15. Upon information and belief, defendants were aware of sexual misconduct by corrections officers, including Toro, by reason of observable and open misconduct by corrections officers indicating improper sexual activity, including but not limited to flirting, being with inmates in an unauthorized area, or removing inmates from their cells at unusual times.

16. Upon information and belief, defendants were also made aware of sexual abuse in Taconic by the filing of inmate grievances and complaints concerning sexual misconduct by staff.

17. Upon information and belief, defendants were also made aware of sexual abuse in Taconic by, among other things, lawsuits filed concerning such conduct. *See, e.g. Amador v. Superintendents of Dep't. of Corr. Servs.*, 03-Civ-0650 (S.D.N.Y. 2003) (putative statewide class

action re: failure to protect all women prisoners in State custody, including at Taconic, from unreasonable risk of staff sexual abuse); *Safadi v. Almanzar*, 98-Civ-7995, 2000 U.S. Dist. LEXIS 16968 (S.D.N.Y. Nov. 22, 2000) (concerning officer who pled guilty to sexual assault of two inmates); *Ortega v. New York,*, 2001-010-052, Claim No. NONE, Motion No. M-63389 (N.Y. Ct. Cl. 2001).

18.     Upon information and belief, before and during the time period when he sexually abused Plaintiff, Toro also engaged in impermissible sexual activity with at least three other female inmates.

19.     Upon information and belief, other corrections staff had knowledge of Toro's sexual misconduct because, among other things, they observed open misconduct indicating improper sexual activity, including but not limited to flirting, being with inmates in an unauthorized area, or removing inmates from their cells at unusual times.

### Toro's Sexual Abuse of Plaintiff

20.     As set forth below, Toro sexually assaulted and raped Plaintiff repeatedly from March to November of 2007.

21.     From in or before February 2007 to in or after November 2007, Toro was assigned to work in the housing areas in Building 93, one of the buildings at Taconic.

22.     From in or about February to July of 2007, Plaintiff was permanently assigned to a housing area in Building 93. As set forth below, on several occasions in August, October and November, Plaintiff was also housed on a temporary basis to Building 93.

23.     On or around March 27, 2007, Toro began sexually assaulting Plaintiff. On the day of the first assault, Toro entered Plaintiff's cell during afternoon count time[1] and fondled her

---

[1] "Count time" is time during which all activity stops, all inmates who are not authorized otherwise are locked into their cells, and corrections staff verify that no inmates are missing. At Taconic, count time occurred four times a

breasts, vaginal area and buttocks, exposed his penis, and shoved her head down and forced her to perform oral sex on him.

24.     The same day, during night count time, Toro ordered Plaintiff to go to the officers' station. As Plaintiff complied with his order, Toro followed her. Inside the officers' station, Toro fondled her breasts, vaginal area and buttocks, and raped her. He threatened to write a disciplinary report against her if she screamed or told anyone about his actions.

25.     Thereafter, until November 2007, Toro repeatedly coerced Plaintiff to perform or be subject to various sexual activities including but not limited to oral sex, vaginal intercourse, and fondling of breasts, vaginal area, buttocks, face or lips. At times, violent acts, such as shoving Plaintiff's head into the wall, accompanied the sexual abuse.

26.     Toro's sexual abuse frequently happened during count times. Usually during the night count, Toro would lock all other inmates in their cells except for Plaintiff. He would then enter Plaintiff's cell and sexually assault and/or rape her there. At other times, Toro sexually assaulted or raped Plaintiff in areas such as the officers' station, the shower area, or the recreation room.

27.     Toro used threats, intimidation and bribery to prevent her from reporting his conduct. He repeatedly threatened to write her a disciplinary report, kill her, kill her family, or to kill himself if she ever told anyone about his actions. He told her that if she ever reported him, she would be punished but he "wouldn't spend a day in jail." He also gave Plaintiff gifts to dissuade her from reporting his conduct.

28.     Other corrections staff facilitated Toro's sexual abuse by condoning Toro or Plaintiff to be in an unauthorized area, allowing Toro onto Plaintiff's housing area when he was

---

day, around approximately 5:30 AM, 11 AM, 4 PM and 10 PM.

not assigned there, or even delivering a message to Plaintiff from Toro, in violation of DOCS rules and regulations.

29.   On occasion, other corrections staff witnessed Toro in Plaintiff's cell, Toro with Plaintiff in a location where Plaintiff should not have been, or Toro removing Plaintiff from her cell during times when she was supposed to be in her cell.

30.   Upon information and belief, other corrections staff were aware of Toro's sexual abuse of Plaintiff because they were aware of his misconduct, such as the foregoing, which indicated improper sexual activity towards Plaintiff. Nonetheless, they failed to take any effective action in response.

31.   Upon information and belief, sometime prior to July 2, 2007, some inmates and/or some corrections staff who suspected or were aware of impermissible sexual activity between Toro and Plaintiff reported it.

32.   Upon information and belief, as a result of such reports, IG commenced an investigation into the actions of Toro.

33.   As part of the investigation, on or around July 2, 2007, representative Carmen Padilla searched Plaintiff's cell and questioned her about sexual contact between her and Toro. The interview took place in front of another corrections officer. Due to Toro's previous threats, fearing disciplinary punishment, and intimidated by the presence of other corrections staff, Plaintiff denied the allegations at that time.

34.   Upon information and belief, the IG had substantial evidence of sexual abuse of Plaintiff by Toro and did not credit the coerced denial. On or around July 3, 2007, Plaintiff was reassigned from Building 93 to a different building, Building 84. Upon information and belief, Plaintiff was reassigned to separate her and Toro.

35.     In addition, upon information and belief having substantial evidence of Toro's sexual abuse of Plaintiff, the IG continued its investigation, including conducting repeated re-interviews of Plaintiff over a period of four months.

36.     The IG re-interviews of Plaintiff occurred on or around August 6, 2007; again, on or around September 17, 2007; again, or around November 20, 2007; and again on or around November 21, 2007.

37.     Each of these interviews occurred in locations where other corrections officers could hear, were in the area, or could enter the area. While, for the same reasons as noted above, Plaintiff feared to confirm sexual contact with Toro and denied it, the IG, as evidenced by the multiple re-interviews of Plaintiff, did not credit the coerced denial.

38.     Notwithstanding the foregoing, including, upon information and belief, the substantial evidence of Toro's abuse, the ongoing IG investigation and the reassignment out of Building 93 where Toro worked, defendants Thornton and Rogers were deliberately indifferent to the unreasonable risk of further sexual assault of Plaintiff by Toro and caused and/or permitted Toro to have renewed access to Plaintiff on multiple occasions.

39.     In or around August of 2007, Plaintiff was transferred back to Building 93 to the housing area known as the "keeplock" unit for approximately seven days. Toro was still assigned to work in Building 93 at that time.

40.     When Plaintiff was transferred back to Building 93, Toro was able to, and did, resume his sexual assaults of Plaintiff, including but not limited to oral sex, vaginal intercourse, and fondling of breasts, vaginal area, buttocks, face or lips.

41. On or around October 7, 2007, Plaintiff was again transferred back to Building 93 to the keeplock unit for approximately 30 days. Toro was still assigned to work in Building 93 at that time.

42. During this time, Toro resumed his sexual assaults against Plaintiff, including but not limited to oral sex, vaginal intercourse, and fondling of breasts, vaginal area, buttocks, face or lips.

43. On or around November 24, 2007, Plaintiff was again transferred back to Building 93 for approximately 3 days. Toro was still assigned to work in Building 93 at that time.

44. Once again, Toro resumed his sexual assaults against Plaintiff, including but not limited to oral sex, vaginal intercourse, and fondling of breasts, vaginal area, buttocks, face or lips.

45. Furthermore, Toro had become aware of the IG's investigation concerning his sexual misconduct toward Plaintiff. Toro persistently harassed Plaintiff about the IG investigations, demanding to know what the IG representative asked and what Plaintiff said in response. He also reasserted and escalated his prior threats against Plaintiff.

46. During the foregoing reassignments of Plaintiff to Building 93, other corrections staff observed Toro with Plaintiff outside her cell, which is prohibited for inmates in keeplock.

47. At least one officer even delivered a message from Toro to Plaintiff while she was in keeplock, in violation of DOCS rules and regulations.

48. Upon information and belief, the corrections staff condoned and disregarded blatant misconduct, such as the foregoing, by Toro.

49. Notwithstanding the foregoing, including, upon information and belief, the substantial evidence of Toro's abuse, the ongoing investigation by the IG into Toro, reassignment out of Building 93 where Toro worked, and obvious misconduct by Toro observed or facilitated by corrections staff, defendants Thornton and Rogers were deliberately indifferent to the obvious and substantial risk to Plaintiff and caused and/or permitted Plaintiff to be transferred back to the housing area where Toro was assigned. Further, when Plaintiff was reassigned Building 93, defendants Thornton and Rogers failed to cause Toro to be reassigned to a different building, or even to enhance the supervision of him.

50. On or around November 26, 2007, Toro sexually assaulted and raped Plaintiff again in Building 93. Plaintiff told Toro that she intended to report his conduct. Toro became angry and violent and twisted Plaintiff's arm and wrist, causing physical pain and injury.

51. On or about November 27, 2007, Plaintiff was transferred to Bedford.

### Defendants' Misconduct

52. Defendant Toro sexually assaulted and raped Plaintiff on multiple occasions.

53. Upon information and belief, before and during the period of Toro's sexual abuse of Plaintiff, defendants Thornton and Rogers were aware of sexual misconduct by correctional staff toward inmates at Taconic.

54. Defendants Thornton and Rogers maintained or failed to remedy policies and practices that they knew created an unreasonable risk of sexual assault by staff of women in their custody, including but not limited to a policy and/or practice of requiring physical proof of an assault before an assault could be considered to be substantiated, disregarding, or condoning other corrections staff who disregarded and/or failed to report, conduct and events indicating sexual misconduct.

55. During the period of Toro's sexual abuse of Plaintiff, defendants Thornton and Rogers were deliberately indifferent to the risk of sexual assault posed by Toro to Plaintiff because defendants Thornton and Rogers were either aware of Toro's sexual misconduct toward Plaintiff yet failed to take effective action to protect Plaintiff, or were unaware due to their inadequate policies and/or practices disregarding, or condoning other corrections staff who disregarded and/or failed to report, conduct and events indicating sexual misconduct.

56. Upon information and belief, in or before July 2007, defendants Thornton and Rogers were aware of allegations of Toro's sexual abuse of Plaintiff and that the IG was conducting an investigation thereof.

57. Notwithstanding such knowledge, defendants Thornton and Rogers failed to remove Toro from guarding Plaintiff or reassigning Plaintiff to a different housing area and were deliberately indifferent to the unreasonable risk of sexual assault of Plaintiff by Toro.

58. Further, defendants Thornton and Rogers caused or permitted Plaintiff to be repeatedly transferred into the housing area where Toro worked, allowing Toro access to Plaintiff to continue his abuse and were deliberately indifferent to the risk that Toro posed to Plaintiff.

59. During the foregoing transfers of Plaintiff to Toro's housing area, defendants Thornton and Rogers failed to cause Toro to be reassigned to a different building or even enhance supervision of him, further demonstrating defendants Thornton's and Roger's deliberate indifference.

60. Defendants Thornton's and Rogers' actions and omissions left Plaintiff at substantial risk from Toro and permitted Toro to continue his sexual abuse of Plaintiff.

**Plaintiff's Injury**

61. As a result of the sexual abuse she suffered at Taconic, Plaintiff has experienced severe physical, mental, and emotional injury including insomnia, depression, anxiety, emotional distress and suicidal thoughts.

62. On or about October 25, 2007, Plaintiff was diagnosed with genital herpes, a sexually transmitted disease that is an incurable, contagious, chronic and lifelong viral infection. It causes pain, discomfort, and can entail serious complications particularly for women, such as damaging or fatal viral transmission to a baby during childbirth. Additionally, people with genital herpes are at an increased risk of other diseases such as AIDS and viral meningitis. Genital herpes requires costly treatment to control and treat lifelong recurrent outbreaks.

63. Upon information and belief, Plaintiff contracted genital herpes from Toro.

### FIRST CLAIM FOR RELIEF
### EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION

64. Plaintiff repeats and realleges all preceding paragraphs as though set forth in full.

65. Toro's sexual assaults and rapes of Plaintiff inflicted substantial pain and emotional and physical injuries to Plaintiff, constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendment rights under the United States Constitution, and proximately caused damage to Plaintiff.

66. Defendants Thornton's and Rogers' acts and omissions regarding Toro's sexual assault and rape of Plaintiff inflicted substantial pain and emotional and physical injuries to Plaintiff, constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendment rights under the United States Constitution, and proximately caused damage to Plaintiff. These acts and omissions include: the deliberate indifference to the unreasonable risk of sexual assault of Plaintiff by reassignment of Plaintiff into Toro's housing area, failure to reassign Toro or place him under additional supervision during the periods Plaintiff was

reassigned to Toro's housing area thereby permitting Toro to continue his sexual abuse of Plaintiff; and the maintenance of or failure to remedy policies and practices creating an unreasonable risk of sexual assault by corrections staff, including policy and/or practice of requiring physical proof of an assault before an assault could be considered to be substantiated, disregarding, or condoning other corrections staff who disregarded and/or failed to report, conduct and events indicating sexual misconduct.

67.     The deprivations of Plaintiff's rights described herein were not reasonably related to the furtherance of any legitimate interest in security or any other legitimate interest.

68.     Defendants' actions and omissions caused Plaintiff to endure substantial and unnecessary physical, mental, and emotional injury.

## SECOND CLAIM FOR RELIEF
### FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

69.     Plaintiff repeats and realleges all preceding paragraphs as though set forth in full.

70.     Toro's sexual assault and rape of Plaintiff inflicted substantial pain and emotional and physical injuries to Plaintiff, deprived Plaintiff of her right to bodily integrity and privacy without due process of law in violation of the Fourteenth Amendment right under the United States Constitution, and proximately caused damage to Plaintiff.

71.     Defendant Thornton's and Rogers' acts and omissions regarding Toro's sexual assault and rape of Plaintiff inflicted substantial pain and emotional and physical injuries to Plaintiff, deprived Plaintiff of her right to bodily integrity and privacy without due process of law in violation of the Fourteenth Amendment right under the United States Constitution, and proximately caused damage to Plaintiff. These acts and omissions include: the deliberate indifference to the unreasonable risk of sexual assault of Plaintiff by reassignment of Plaintiff into Toro's housing area, failure to reassign Toro or place him under additional supervision

during the periods Plaintiff was reassigned to Toro's housing area thereby permitting Toro to continue his sexual abuse of Plaintiff; and the maintenance of or failure to remedy policies and practices creating an unreasonable risk of sexual assault by corrections staff, including policy and/or practice of requiring physical proof of an assault before an assault could be considered to be substantiated, disregarding, or condoning other corrections staff who disregarded and/or failed to report, conduct and events indicating sexual misconduct.

72.     The deprivations of Plaintiff's rights described herein were not reasonably related to the furtherance of any legitimate interest in security or any other legitimate interest.

73.     Defendants' actions and omissions caused Plaintiff to endure substantial and unnecessary physical, mental, and emotional injury.

## JURY DEMAND

74.     Plaintiff hereby requests and demands a trial by jury.

## PRAYER FOR RELIEF

For this Complaint, based on all the above causes of action, Plaintiff prays for the following:

(a)     Compensatory damages jointly and severally from each defendant, in an amount to be proved at trial;

(b)     Punitive damages from each defendant;

(c)     Attorneys' fees, costs, and disbursements incurred in this action;

(d)     Such further and other relief as the Court deems proper.

Dated: New York, New York  
September 30, 2008

COOLEY GODWARD KRONISH LLP

By: /s/ William O'Brien  
William O'Brien  
Karen K. Won

1114 Avenue of the Americas  
New York, New York 10036  
Tel: (212) 479-6000  
Fax: (212) 479-6275  
wobrien@cooley.com  
kwon@cooley.com

*Attorneys for Plaintiff Gultela Qasem*